E-filed 3/10/2017

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDIO MPEG, INC, <br><br> Plaintiff, <br><br> v. <br><br> HP INC., et al., <br><br> Defendants. | Case No.16-mc-80271-HRL <br><br> **ORDER GRANTING APPLE INC.'S MOTION TO QUASH SUBPOENA** <br><br> **ORDER GRANTING PATRICK MURPHY'S MOTION TO QUASH SUBPOENA** <br><br> Re: Dkt. Nos. 1, 5 |

Respondent Dell, Inc. ("Dell") is the defendant and counter-claimant in litigation before the Eastern District of Virginia. Dell served two subpoenas on non-parties that are the subject of the current motions before this court; one requesting documents and testimony from Apple, Inc. ("Apple"), and one requesting documents and testimony from Patrick Murphy ("Murphy"), a current Apple employee. Both Apple and Murphy moved to quash the subpoenas. Dkt. Nos. 1, 5. For the reasons described below, the court grants both motions to quash.

## BACKGROUND

In the underlying litigation, Dell is being sued by plaintiffs Audio MPEG, Inc., U.S. Philips Corporation, TDF SAS, and Institut for Rundfunktechnick GmbH ("Plaintiffs"), for patent infringement. Dkt. No. 15-7, Ho Decl., Ex. B. Dell has also counter-claimed against Plaintiffs and Societa Italiana Per Lo Sviluppo Dell'Elettronica SPA (together, "Counter-Defendants"). Dell alleges claims for (1) Violation of the Sherman Act § 1: Agreement in Restraint of Trade; (2) Violation of the Sherman Act § 1: Tying; (3) Violation of the Sherman Act § 2: Conspiracy to Monopolize; (4) Violation of the Sherman Act § 2: Monopolization; (5) Civil Conspiracy Under Virginia Va. Code. Ann. §§ 18.2-499-500; and (6) Common Law Civil Conspiracy Under Virginia

State Law. Dkt. No. 15-7, Ho Decl., Ex. A. Non-party Apple is a licensee of Counter-Defendants and an alleged un-named co-conspirator. Dkt. No. 15-3. The court is intentionally vague as to the details of the alleged conspiracy and antitrust violations, as these matters were subject to a sealing order in the Eastern District of Virginia.

**1. Apple.**

In August of 2016, Dell served Apple with a subpoena demanding production of documents in 22 categories and testimony on 19 topics. Dkt. No. 1, Cannom Decl., ¶ 2, Ex. A. The parties met-and-conferred in August and Apple served its objections, *id.*, at ¶¶ 3-7, and there the matter remained until December as the result of a stay on discovery. In December, Apple and Dell resumed meet-and-confer efforts. *Id.* at ¶¶ 14-16. Dell agreed to narrow the scope of its requests and identified five Apple employees it believed possessed relevant documents. *Id.* Apple, in turn, began its document review, but asserts that it identified no documents that were relevant and non-privileged. *Id.* at ¶ 18.

Dell's narrowed requests for documents included three categories: (1) communications regarding Apple's licensing agreements with Counter-Defendants; (2) communications regarding Apple's relationship with Counter-Defendants as a licensee or potential licensee; and (3) "certain sales data for Apple products that are relevant to damages in the E.D. Va. Litigation." Dkt. No. 15-5, Ho Decl., ¶ 2. Dell also narrowed its requests for deposition testimony to the following topics (the numbers correspond to the topic numbers in the subpoena): (2) "Apple's licenses, proposed licenses, settlement agreements, proposed settlement agreements, and negotiations regarding the Patents-in-Suit or the SISVEL Patent Pool[;]" (5) an agreement between Apple and Counter-Defendants, "including but not limited to communications and negotiations regarding" that agreement between Apple and Counter-Defendants; (6) a 2015 amendment to the agreement in topic 5, "including but not limited to [related] communications and negotiations[;]" and (9) "Any agreements or understandings or discussions between Counter-Defendants and Apple, regarding the licensing of Dell for the Patents-in-Suit or the SISVEL Patent Pool, or the filing, status, or pursuit of litigation against Dell regarding infringement of the Patents-in-Suit or the SISVEL Patent Pool, including this lawsuit." Dkt. No. 15-5, Ho Decl., ¶ 3; Dkt. No. 2-1,

Cannom Decl., Ex A.

As Apple continued to object to Dell's requests, and the parties were unable to reach agreement, Apple filed its motion to quash in late December 2016. In its motion, Apple argues: (1) Dell identifies no relevant, non-privileged information that is not available from parties to the underlying litigation; (2) Dell's requests are overly burdensome and overbroad; (3) the burden to Apple of complying with the subpoena outweighs the benefits to Dell; and (4) the costs of Apple's compliance should be shifted to Dell, or the court should sanction Dell. Dkt. No. 1. In response, Dell argues that (1) it has narrowed its requests, so that Apple's overbreadth arguments are "red herrings;" (2) the information it requests is relevant, not available from other parties, and proportional to the needs of the litigation; (3) Apple's privilege arguments are meritless; and (4) Apple should bear its own costs. Dkt. No. 15.

**2. Murphy.**

The sequence of events described above roughly parallels that relevant to the subpoena Dell served upon Patrick Murphy. Murphy is an attorney currently employed by Apple. Dkt. No. 7, Murphy Decl., ¶¶ 1, 2. Murphy also represented Cyberlink Corp. (a company to which Counter-Defendants declined to license the Patents at issue in the underlying litigation) on patent licensing matters as outside counsel in a previous position. *Id.* at ¶ 3. The initial subpoena served by Dell contained requests for (1) "Documents reflecting communications between Counter-Defendants and Cyberlink USA or Cyberlink Corp.," (2) "Documents reflecting communications between Counter-Defendants and Microsoft," and (3) "Documents reflecting any negotiations or agreements to license the Asserted Patents," as well as deposition testimony. Dkt. No. 6-1, Cannom Decl., Ex. A. Dell, however, neglected to tender witness fees with the subpoena. Additionally, Murphy asserted that he had "no documents" in his possession that related to the subpoena. Dkt. No. 7, Murphy Decl., ¶ 7. In light of this, and following additional discussions with Murphy's counsel (who also represents Apple in this matter), Dell served Murphy with a second subpoena, accompanied by witness fees and lacking requests for production of documents. Dkt. No. 15-12, Ho. Decl., Exs. F, G.

As with Apple, Murphy filed a motion to quash in late December 2016. In his motion, he

argues that (1) the initial subpoena should be quashed due to Dell's failure to tender witness fees;[1] (2) the information sought is overbroad and unduly burdensome; (3) the information sought is available from a party or is privileged; and (4) the burden on Murphy of compliance outweighs the benefits to Dell.  Dkt. No. 5.  In response, Dell argues that (1) Murphy's burden objections are meritless because Murphy fails to demonstrate any special burden; (2) the information Dell seeks is not available from other parties and is proportional to the needs of the underlying litigation; and (3) Murphy's privilege argument is meritless.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 45 provides in pertinent part that "the court for the district where compliance is required must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A).  The scope of discovery permitted through a Rule 45 subpoena is "the same as" that permitted under Rule 26(b).  *Intermarine LLC v. Spliethoff Bevrachtingskantoor BV*, 123 F. Supp. 3d 1215, 1218 (N.D. Cal. 2015).  Thus, the court must limit discovery if the discovery sought can be obtained from a more convenient or less burdensome source, or if "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b).

On a Rule 45 motion to quash, "the moving party has the burden of persuasion, but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Lemberg Law LLC v. Hussin*, No. 16-mc-80066-JCS, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) (quoting *Pers. Audio LLC v. Togi Entm't Inc.*, No. 14-MC-80025 RS (NC), 2014 WL 1318921, at *2 (N.D. Cal. Mar. 31, 2014)).  Rule 45 "explicitly instructs that a court must quash a subpoena that seeks disclosure of privileged material[.]" *Id.*, at *2.  Courts disfavor blanket assertions of privilege, *U.S. v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002), but courts have quashed subpoenas where the issuing party has failed to explain "what non-privileged, relevant information [the subpoenaed witness] could offer," *Unigene Labs., Inc. v. Apotex, Inc.*, No. C07-80218 SI, 2007

---

[1] As Dell has served Murphy with a new subpoena accompanied by witness fees, the court deems the initial subpoena withdrawn and addresses the remainder of this order to the second subpoena.

1  WL 2972931, at *3-4 (N.D. Cal. Oct. 10, 2007).

## DISCUSSION

**1. Apple.**

Categories one and two and all four deposition topics each request communications regarding Apple's licenses, agreements, and/or licensing relationship with the Counter-Defendants. Inasmuch as these requests seek external communications, agreements, or negotiations between Apple and the Counter-Defendants, Dell has not established that documents pertaining to these requests could not be more easily obtained from parties to the litigation. "There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007).

Dell maintains that it is entitled to ask Apple about its understanding of these communications (and, presumably, for *internal* communications that reflect that understanding). To demonstrate that it is entitled to this information, however, Dell must first show that Apple's understanding of these communications is relevant to its claims in the underlying litigation. *Lemberg Law LLC v. Hussin*, No. 16-mc-80066-JCS, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) (quoting *Pers. Audio LLC v. Togi Entm't Inc.*, No. 14-MC-80025 RS (NC), 2014 WL 1318921, at *2 (N.D. Cal. Mar. 31, 2014)) ("the party issuing the subpoena must demonstrate that the discovery sought is relevant."). Dell asserts that Apple and Counter-Defendants entered into anti-competitive agreements designed to raise Dell's costs. As such, Dell argues, Apple's motivations in its communications and negotiations with Counter-Defendants, and its understanding of those communications and negotiations, is "central to Dell's antitrust counterclaims." Dkt. No. 15-3. Dell provides the following example of a document that would be relevant. Documents Dell obtained from Counter-Defendants revealed that Apple pledged to draft a memo discussing anti-trust concerns raised by an agreement between Apple and Counter-Defendants. Dell asserts that the contents of this memo are relevant to whether Apple and Counter-Defendants knew they were violating antitrust laws.

The court is not persuaded that Apple's motivations for and understandings of its communications and relationship with Counter-Defendants are relevant to Dell's antitrust claims

against Counter-Defendants.

To establish a violation of the Sherman Act Section 1 for an Agreement in Restraint of Trade, a plaintiff must show "(1) that the conspiracy produced adverse, anticompetitive effects within the relevant product and geographic market; (2) that the objects and conduct pursuant to the conspiracy were illegal; and (3) that the plaintiff was injured as a proximate result of the conspiracy." *Advanced Health-Care Servs., Inc. v. Redford Cmty. Hosp.*, 910 F.2d 139, 144 (4th Cir. 1990). But the motivations of a non-party are irrelevant to whether the parties are liable for antitrust violations. *U.S. v. Paramount Pictures,* 334 U.S. 131, 161 (1948) ("There is some suggestion . . . that [non-parties] with whom defendants dealt fathered the illegal practices and forced them onto the defendants. But . . . that circumstance if true does not help the defendants. For acquiescence in an illegal scheme is as much a violation of the Sherman Act as the creation and promotion of one."); *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541 (4th Cir. 1998) ("it is not necessary that [defendants] have shared [their counterpart's] alleged anticompetitive motive in entering into a proscribed restraint; it is sufficient that [defendant], regardless of its own motive, merely acquiesced in the restraint with the knowledge that it would have anticompetitive effects."); *Duplan Corp. v. Deering Milliken Inc.*, 594 F.2d 979, 982 (4th Cir. 1979) ("Where [defendants] were knowing participants in a scheme whose effect was to restrain trade, the fact that their motives were different from or even in conflict with those of the other conspirators is immaterial.").

To prevail on a monopolization claim pursuant to Section 2 of the Sherman Act, a plaintiff must show "possession of monopoly power in a relevant market, willful acquisition or maintenance of that power in an exclusionary manner, and causal antitrust injury." *Advanced Health-Care Servs., Inc.*, 910 F.2d at 147. A *non-party's* motivations and understanding of its relationship with a party accused of monopolization has no bearing on any of these elements.

To prevail on a conspiracy to monopolize claim, a plaintiff must show "concerted action, a specific intent to achieve an unlawful monopoly, and commission of an overt act in furtherance of the conspiracy." *Id.* at 150. Again, Dell has failed to show how a non-party's motivations and understandings are relevant to whether Counter-Defendants had the requisite intent to achieve an

unlawful monopoly.

The examples provided and materials cited by Dell do not persuade the court that the information it seeks is relevant. To take the example of the Apple memo discussing antitrust concerns mentioned above, if this memo was sent to the Counter-Defendants, it would be available from parties to the litigation and there would be no need to get it from Apple. If it had never been sent to Counter-Defendants, it would not provide any information about Counter-Defendants' knowledge or motivations. In either case, Dell does not show how Apple's understandings of the memo have any relevance to establishing Counter-Defendants' liability. Of course, the communication from Apple stating that the agreement may raise antitrust concerns is itself relevant to Counter-Defendants' knowledge; but Dell already has that communication.

As for the authority cited by Dell, respondent cites two articles, one discussing the antitrust implications of "Contracts that Reference Rivals," and one discussing the antitrust implications of Patent aggregators' making agreements to raise rivals' costs. Fiona Scott-Morton, U.S. Dept. of Justice, *Contracts That Reference Rivals*, https://www.justice.gov/atr/file/518971/download; Mark Popofsky & Michael Laufert, *Antitrust Attacks on Patent Assertion Entities*, 79 Antitrust L.J. 445, 459-60 (2014). Neither article suggests that the subjective motivations of a non-party to a litigation is relevant to establishing the antitrust liability of a party. Similarly, the case cited by Dell, *U.S. v. Blue Cross Blue Shield of Michigan*, discusses the elements for establishing a violation of Section 1 of the Sherman Act: "1) an agreement 2) affecting interstate commerce 3) that unreasonably restrains trade." 809 F. Supp. 2d 665, 671 (E.D. Mich. 2011). The third element concerns the effects of the agreement—it must suppress or destroy competition rather than promote it. *Id.* Nothing in this case suggests that the motivations and understandings of a non-party are relevant.

Dell makes one additional argument related to relevance. Dell assert that Apple's understanding of its competitors (and who they are) is relevant to establishing that the licensing agreements are an effort to target Apple's rivals. But, as discussed above, Dell has failed to show that *Apple's* understandings are relevant to Counter-Defendants' liability. It seems to be Counter-Defendants' understandings of Dell's and Apple's competition that would be relevant—and *that*

information could be more easily obtained from Counter-Defendants. The court declines to impose a burden on Apple to provide this information, considering the more readily available sources. *See* Fed. R. Civ. P. 26(b)(2). Because Dell has, for the most part, failed to show relevance, and because what relevant material there is could be more easily obtained from other sources without causing a burden to non-party Apple, the court grants the motion to quash the subpoena as to categories one and two and all four deposition topics.

The remaining category of information requested by Dell concerns "certain sales data for Apple products that are relevant to damages" in the underlying litigation. Dkt. No. 15-5, Ho Decl., ¶ 2. Dell asserts that Apple "never objected to the third category,[2] and indicated that it routinely provides such information to parties in patent litigation." *Id.* In response, Apple argues that Dell fails to explain "how worldwide sales requests from a sixteen-year period relate to the present litigation which involves the infringement of three U.S. patents." Dkt. No. 23-4. Apple further denies that it has produced such "overly broad sales information," even as a party to litigation.

Dell does not provide any additional information about how the Apple sales information is relevant to damages in the underlying litigation. It does not explain for which claim the information is relevant (damages are sought with respect to Counter-Defendants' patent infringement claim, Dell's antitrust counterclaims, and Dell's Virginia statutory counterclaim), or why a *non-party's* sales data is relevant. Dell merely states that the sales data is "relevant to damages." Such conclusory statements fail to satisfy a party's burden to show relevance. *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-cv-03393-YGR (JSC), 2014 WL 6706873, at *3 (N.D. Cal. Nov. 25, 2014) ("Defendants' conclusory statements regarding the relevance of the documents sought fail to satisfy their burden to demonstrate relevance.").

Additionally, the court is not persuaded that the burden to Apple of producing this large amount of sales data—15 years' worth of monthly and annual sales information, domestic and

---

[2] The court reads this assertion as referring to the meet-and-confer discussions between Apple and Dell, as Apple's objections to the subpoena object to providing this information. Dkt. No. 2, Cannom Decl., Ex. B.

international, for Apple iPods, iPads, iPhones, MacBooks, and iMacs—is outweighed by the benefit to Dell of obtaining this information. First, as mentioned above, Dell has not sufficiently established this information's relevance. Second, Dell has not stated why 15 years' worth of data is necessary, especially given the fact that the Apple-and-Counter-Defendant negotiations and agreements that form the subject of Dell's antitrust claims occurred in 2006. Finally, Dell has indicated to Apple that this damages information may be available from other sources. Dkt. No. 2, Cannom Decl., ¶ 15. In light of these considerations, the court concludes that the burden to Apple of producing this information outweighs its likely benefit to Dell, especially given that it may be available from other less expensive sources. *See* Fed. R. Civ. P. 26(b)(2).

The court next addresses Apple's request to shift the costs of its compliance to Dell and/or to sanction Dell for refusing to reduce the burden of its subpoena. The Ninth Circuit has long held that non-party witnesses subject to discovery requests deserve "extra protection" from the courts. *U.S. v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982); *High Tech Med. Instrumentation Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. Mar. 17, 1995). Following the decision in *Legal Voice v. Stormans Inc.*, the rule in this Circuit is that FRCP 45 *requires* the court to shift the costs of a non-party's compliance with a subpoena "if those costs are significant." 738 F.3d 1178, 1184-85 (9th Cir. 2013). In determining whether costs are significant, the court may "consider the ability of the producing non-party to bear the costs of production." *U.S. v. McGraw-Hill Co., Inc.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014).

Here, Apple asserts that has spent more than $20,000 in its attempts to comply with the subpoena. Dkt. No. 2, Cannom Decl., ¶ 19. $20,000 was found to be a "significant" expense in *Legal Voice*. 738 F.3d at 1185. In that case, however, the non-party incurring that expense was a non-profit legal advocacy group. Apple, on the other hand, is one of the world's largest and most profitable corporations. As a result, the court is not persuaded that the costs cited by Apple are "significant," and declines to shift Apple's costs of compliance to Dell. Further, to the extent that Apple's opening brief suggests that the court should sanction Dell for its failure to avoid imposing an undue burden, the court will not impose sanctions in light of Dell's cooperative efforts to narrow the scope of discovery requested in its subpoenas.

**2. Murphy.**

Dell seeks to depose Murphy because of his first-hand knowledge on topics including communications between Counter-Defendants and Cyberlink, communications between Counter-Defendants and Microsoft, and negotiations or agreements to license the Patents-in-Suit. Murphy, as outside counsel for Cyberlink and an attorney for Apple, was involved in negotiations related to licensing (or not licensing) the Patents. Dell asserts that it needs testimony on this information for several reasons: (1) to shed light on Apple's state of mind and its role in the antitrust conspiracy alleged by Dell, and to determine why Apple requested the terms it requested in its negotiations with Counter-Defendants; (2) to know why Counter-Defendants declined to license Cyberlink, which Dell states is relevant to damages calculations; and (3) to determine the appropriate royalty rate for calculating damages, which depends in part "on the Counter-Defendants' licensing practices with respect to other licenses."

As an initial matter, the reasons Dell cites for requiring Murphy's testimony indicate that most of the information sought is available from parties to the litigation. Regarding reasons (2) and (3) above, Counter-Defendants should be in a better position than Murphy to explain their own reasons for declining to license Cyberlink and to discuss their own licensing practices with respect to other licenses. To the extent that Murphy has information on these topics, his information would likely be duplicative. *See Intermarine, LLC v. Spliehoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1218 (N.D. Cal. 2015) (determining that testimony would be duplicative since a party could provide the answers sought).

As for Dell's remaining reason for requiring Murphy's testimony, as discussed with respect to the subpoena served upon Apple, Dell has not shown that Apple's motivations and state of mind in the alleged antitrust conspiracy are relevant to Dell's claims in the underlying lawsuit.

While Murphy does not show any particularly compelling burden—though the court acknowledges that sitting and preparing for a deposition is always somewhat burdensome, *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 405, 412 (C.D. Cal. 2014) ("Prearing and sitting for a deposition is always a burden, even when documents are not requested, particularly for a non-party")—the court is nevertheless persuaded that the burden to Murphy

outweighs the benefit to Dell considering the needs of the underlying litigation.  As the information requested from Murphy is available from other sources and/or irrelevant, even the usual burden associated with sitting and preparing for a deposition would be undue.  *In re Subpoena to Produce Documents of Clapp, Moroney, Bellagamba, Vicinich, & Beeman*, No. 14-mc-80191-RS (JCS), 2014 WL 3784112, at *2 (N.D. Cal. July 31, 2014) (quoting *Compaq Computer Corp. v. Packard Bell Elecs.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995)) (if documents requested are not relevant, "any burden whatsoever imposed . . . would be by definition undue.").

## CONCLUSION

The court grants Apple's and Murphy's motions to quash the subpoenas.  The court declines to shift Apple's costs to Dell or to sanction Dell.

**IT IS SO ORDERED.**

Dated: 3/10/2017

_____
HOWARD R. LLOYD
United States Magistrate Judge

11